


ENTERED
11/29/2018

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **RICARDO A. EVERETT** | § | **CASE NO: 15-20328** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 13** |

**MEMORANDUM OPINION**

On May 2, 2018, Dilks & Knopick, LLC filed a Motion to Disburse Unclaimed Funds, requesting that the Court transfer $5,854.75 in unclaimed funds from the Court Registry originally owed to Ricardo A. Everett following the dismissal of his chapter 13 bankruptcy case. Dilks & Knopick claims ownership of the funds pursuant to an Assignment Agreement entered into with Everett on April 24, 2018. The Assignment Agreement provides for a division of the funds between the two parties upon approval and disbursement by the Court. Dilks & Knopick maintains that the percentage it contracted to retain under the Assignment upon disbursement of the funds is valid under Texas law.

The Court denies Dilks & Knopik, LLC's Motion to Disburse Unclaimed Funds.

**Background**

On August 28, 2015, Ricardo A. Everett filed for bankruptcy. (ECF No. 1). He sought to voluntarily dismiss his bankruptcy case on December 14, 2015. (*See* ECF Nos. 1, 44). The Court dismissed Everett's chapter 13 bankruptcy case on December 16, 2015. (ECF No. 46). The Court's dismissal Order required the Chapter 13 Trustee to "hold all previously undistributed funds received in th[e] case for 21 days after the entry of th[e] Order . . . ." (ECF No. 46). On June 2, 2016, the Trustee filed a Motion to Pay Funds into the Court Registry pursuant to 11 U.S.C. § 1408. (*See* ECF No. 49). The Trustee indicated that checks directed to Everett "had not cleared within 90 days." (ECF No. 49). As such, the Trustee requested that

$5,854.75 owed to Everett be deposited into the Court Registry. (ECF No. 49). The Court granted the Trustee's motion on June 30, 2016. (*See* ECF No. 50).

On May 2, 2018, Dilks filed a Motion to Disburse Unclaimed Funds. (*See* ECF No. 55). Dilks' application requested that the Court transfer the $5,854.75 deposited in the Court Registry on behalf of Ricardo A. Everett to Dilks. (ECF No. 55 at 1). As evidence of its standing to claim ownership of the unclaimed funds, Dilks included in its application an Assignment Agreement (the "Assignment"), which allegedly assigned, transferred, and conveyed Everett's "rights, title, and interest in the Funds . . . ." (ECF No. 55 at 6). Pursuant to the Assignment, Dilks is to receive an "agreed upon 33%" of the funds when the application is granted and the funds are disbursed. (ECF No. 60 at 3).

On July 31, 2018, the Court held a hearing on Dilks' Motion. At the hearing, counsel appeared for Dilks. Dilks' counsel represented that Dilks had not made a payment to Everett prior to the Assignment in consideration for the assignment of his right to the unclaimed funds. (July 31, 2018 Hearing at 1:35 p.m.). Furthermore, counsel acknowledged that the Assignment provided for a split of the recovered funds between Everett and Dilks upon disbursement. (July 31, 2018 Hearing at 1:35 p.m.).[1] In light of counsel's statements, the Court requested briefing on whether Texas law applied to the unclaimed funds and, if so, whether the percentage agreed upon by the parties violated Texas law.

**Jurisdiction**

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

[1] The amount Everett is to receive upon disbursement of the unclaimed funds is $3,903.17. (July 31, 2018 Hearing at 1:36 p.m.). Pursuant to the Assignment, Dilks is to retain possession of the remaining sum—an agreed upon 33% of the unclaimed funds.

## Analysis

Dilks maintains that the Assignment Agreement does not violate Texas law, because the unclaimed funds are not "abandoned property" and therefore not subject to the Property Code's fee restriction. Although the unclaimed funds are not abandoned property under the Unclaimed Property Act, the Agreement fails for lack of consideration.

### *I. The Unclaimed Property Act*

The Unclaimed Property Act defines property that is presumed abandoned and prescribes a process for reporting and delivering it to the Comptroller to be held perpetually for the owner. *Highland Homes Ltd. v. State*, 448 S.W.3d 403, 408 (Tex. 2014). The Act further sets a maximum fee for the recovery of mislaid property. *See Eason v. Calvert*, 902 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1995, writ. denied) (citing TEX. PROP. CODE ANN. § 74.507). Under the Unclaimed Property Act, "[a] person who informs a potential claimant that the claimant may be entitled to claim property that is reportable to the State Treasurer . . . may not contract or receive from the claimant for services an amount that exceeds 10 percent of the value of the property received." TEX. PROP. CODE ANN. § 74.507. The Act's applicability, however, is limited to property that is presumed abandoned. TEX. PROP. CODE ANN. § 74.001(a). Personal property is presumed abandoned if, "for longer than three years: (i) the existence and location of the owner of the property is unknown to the holder of the property; and (ii) according to knowledge and the records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised. TEX. PROP. CODE ANN. § 72.101; *see also Highland Homes*, 448 S.W.3d at 410 (explaining that sections under the Act "apply only to a person who has property that the owner has not claimed or exercised ownership over for more than three years").

The unclaimed funds at issue are not presumed abandoned under the Unclaimed Property Act. The Trustee made a motion to deposit the unclaimed funds into the Court Registry on June 2, 2016, indicating that checks to Everett "had not cleared within 90 days." (ECF No. 49). On May 2, 2018, Dilks filed its Motion to Disburse Unclaimed Funds, requesting that the Court disburse the unclaimed funds held in the Court Registry in favor of Ricardo Everett. (*See* ECF No. 55). Accordingly, although "the existence and location of the owner of the property" may have been "unknown to the holder of the property," it was not for a period longer than three years. Dilks' claim to the funds was made within two years of the Trustee's motion to deposit the funds into the Court Registry. Consequently, the funds are not abandoned property under the Unclaimed Property Act.

***II. Validity of the Assignment***

Under statutory requirements and due process principles, the Court has the duty to protect the original claimant's property interest by making sure that unclaimed funds are disbursed to their true owner. *In re Applications for Unclaimed Funds Submitted in Cases Listed on Exhibit "A"*, 341 B.R. 65, 69 (Bankr. N.D. Ga. 2005). Because an application for unclaimed funds is typically considered *ex parte*, the Court must insist on exact compliance with legal requirements relating to the authority of an individual or entity to act on behalf of the owner. *Id*. For an applicant as an assignee of the original creditor, the assignee must establish its position as the "rightful owner" of the funds as a matter of record in the bankruptcy court. *Id*. at 72.

No words of art are required to constitute an assignment; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient. *In re Cooper Mfg. Corp*., 344 B.R. 496, 508 (Bankr. S.D. Tex. 2006) (citing *U.S. v. Central Gulf Lines, Inc*., 974 F.2d 621, 630 (5th Cir. 1992)). Under Texas law, an assignment is a manifestation to another person by the

owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or third person. *Id*. (quoting *Harris Methodist Fort Worth v. Sales Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005)). Intent to transfer is the essential factor of a valid assignment. *Id*. (citing *In re Gibraltar Res., Inc*., 211 B.R. 216, 220 (Bankr. N.D. Tex. 1997)).

Dilks asserts its position as "rightful owner" of the funds by virtue of the Assignment Agreement. The Assignment provides that Everett assigns, transfers, and conveys all of his "rights, title and interest in the Funds" to Dilks, subject to a division of the funds once the Court has approved disbursement. (ECF No. 33 at 6). Furthermore, counsel for Dilks indicated that Everett did so, because "he did not wish to spend the time or the expenses to collect such funds." (July 31, 2018 Hearing at 1:34 p.m.; *see also* ECF No. 55 at 6 ("Assignor not desirous of attempting collection of the Funds nor wishing to incur the time and expense of such collection, does hereby wish and does assign . . . .")). On its face, the Assignment is evidence of Everett's intent to transfer his rights to the unclaimed funds to Dilks.

However, an assignment must also be supported by valuable consideration. *See In re Ashford*, 73 B.R. 37, 39–40 (Bankr. N.D. Tex. 1987) ("In addition to intent being a requisite for the validity of an assignment, consideration is also necessary."); *see also In re AFI Services, LLC*, 486 B.R. 827, 836 (Bankr. S.D. Tex. 2013) ("Consideration is a fundamental element of every valid contract, and courts have long recognized that a promise itself can be sufficient consideration to create a binding contract.") (citations omitted). Valuable consideration may consist of either "some right, interest, profit, or benefit accruing to the party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." *Kirby-Carpenter Co. v. Burnett*, 144 F. 635, 636 (5th Cir. 1906).

The Court notes that the Assignment Agreement states that it is "for good and valuable consideration." However, the Assignment also contains a merger clause that obviates "any and all prior agreements, oral or written." The Court will examine the text of the Agreement, and the statements of Dilks' counsel, with respect to consideration.

The cited consideration is: "The consideration herein given by Assignee to Assignor shall be the sum of $xxx[2] to be paid by any lawful tender upon execution of this Agreement, receipt of the Funds, and fulfillment of the obligations hereunder." The promise is a hollow one. Dilks did not undertake to attempt any collection of the funds.[3] Its payment obligation to Everett is triggered only if it received the funds from the Court.

While Everett has given up a legal right—his right to attain the unclaimed funds in full—he received nothing in return from Dilks. Dilks has incurred no detriment, nor provided Everett with a benefit in exchange for Everett's legal right to the funds. Dilks was under no obligation to attempt to collect the funds, or to expend any money or effort on behalf of Everett. At the hearing, counsel acknowledged that Dilks had not made a payment to Everett prior to the Assignment in consideration for the assignment of his right to the unclaimed funds. (July 31, 2018 Hearing at 1:35 p.m.). Instead, counsel maintained that the Assignment provided for a split of the recovered funds between Everett and Dilks upon disbursement. (July 31, 2018 Hearing at 1:35 p.m.). However, nowhere in the agreement does Dilks bind itself to attempt to recover the

---

[2] The amount is redacted on the copy of the Agreement filed with the Court. However, Dilks has represented that the amount is 1/3 of the amount collected.

[3] Consideration matters. For example, if Dilks was under an obligation to "use its best efforts to collect the funds," it would have been obligated to do so. Without such an obligation, Dilks might be free to renegotiate its terms with Everett. For example, could Dilks now go to Everett and refuse to proceed unless Everett agrees to reimburse Dilks for its attorney's fees incurred in this matter? Although there is no indication that it has done so, Everett would be powerless in such a "renegotiation." If consideration is not a requirement, Dilks would actually own the claim. It could simply refrain from taking further action until Everett conceded.

unclaimed funds. Rather the Assignment continuously refers to "obligations" that are nowhere to be found or defined. The Assignment fails for lack of consideration.

The division of the funds between the funds locator and the party to whom the funds are owed upon disbursement does not necessarily prevent the creation of a valid assignment. *See* Restatement (Second) of Contracts § 330 ("[I]f the prospective transferee is authorized to receive performance on behalf of the obligee-transferor and to retain it, there may be an assignment of the contractual right. The test is whether an intention is manifested to transfer present ownership of the right."); *see also In re A.G.A. Flowers, Inc.*, 457 B.R. 887, 886 (S.D. Fla. 2011) ("The funds locators obtain an assignment of the creditor's claim, file an application to withdraw . . . and retain an agreed upon percentage of the money when the application is granted and the funds are dispersed."). The assignment, however, must be supported by valid consideration to be effective. Accordingly, Dilks' failure to provide Everett with payment prior to, or contemporaneously with, the creation of the Assignment, and its failure to legally bind itself to attempt to recover the unclaimed funds, prevents the creation of a valid assignment.

The Court finds that the Assignment Agreement between Everett and Dilks & Knopik, LLC, fails for lack of consideration.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **November 29, 2018.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE